**Nielsen V. Lewis** (NVL 0631)
**HILL WALLACK**
**Attorneys At Law**
202 Carnegie Center
CN 5226
Princeton, NJ 08543
(609) 924-0808
Attorneys for Plaintiff

RECEIVED-CLERK
U.S. DISTRICT COURT

2004 DEC 29  P 3: 06

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NEW JERSEY TRANSIT CORPORATION,

    Plaintiff,

v.

AMERICAN PREMIER UNDERWRITERS,
INC., CONSOLIDATED RAIL
CORPORATION and JOHN DOE #1
THROUGH #10,

    Defendants.

Civil Action No.

04-6423 (JLL)

**COMPLAINT**

Plaintiff, New Jersey Transit Corporation, an instrumentality of the State of New Jersey (hereinafter, "New Jersey Transit" or "Plaintiff"), by way of complaint against Defendants, American Premier Underwriters, Inc. ("APU"), Consolidated Rail Corporation ("Conrail"), and John Doe #1 through #10, fictitious defendants, says:

### THE NATURE OF THE ACTION

1.   This action is commenced pursuant to the cost recovery, contribution and declaratory relief provisions of the

{01218062}

Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendment and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq. (collectively, "CERCLA"), the laws of the State of New Jersey, including but not limited to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. ("Spill Act"), and the Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., and federal and state common law, relating to the cleanup of hazardous substances at a rail yard located in the City of South Amboy, New Jersey ("South Amboy Yard"). The yard is currently owned and used by Plaintiff in connection with its operation of commuter rail passenger service in the State of New Jersey.

## JURISDICTION AND VENUE

2. This Court has original and exclusive jurisdiction over Counts I, II and III of the Complaint (CERCLA cost recovery, contribution and declaratory judgment claims) pursuant to 28 U.S.C. §§ 1331, 1345 and 2201 (original federal question jurisdiction), and 42 U.S.C. § 9613(b) (exclusive jurisdiction). The jurisdiction of this Court to award declaratory relief for future response costs and other matters is afforded by 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Statute, 28 U.S.C. §§ 2201-2202.

2

3.     This  Court  has  supplemental  jurisdiction  over  the
state  law  claims  asserted  in  Counts  IV  through  XVI  of  the
Complaint pursuant to 28 U.S.C. § 1367.

4.     This  Court  also  has  jurisdiction  over  the  state  law
claims  asserted  in  Counts  III  through  XIV  of  the  Complaint
pursuant  to  28  U.S.C.  §  1332  (diversity  of  citizenship
jurisdiction).

5.     The  venue  for  this  action  is  proper  pursuant  to  the
provisions  of  28  U.S.C.  §  1391(b)  and  42  U.S.C.  §  9613(b)
because  the  alleged  releases  of  hazardous  substances  and  events
giving  rise  to  the  Complaint  took  place  in  this  judicial
district,  and  the  property  that  is  the  subject  of  this  action  is
situated in this judicial district.

### THE PARTIES

6.     Plaintiff  New  Jersey  Transit,  a  body  corporate  and
politic,  is  an  instrumentality  of  the  State  of  New  Jersey
exercising  public  and  essential  governmental  functions,  with  its
principal  place  of  business  located  at  One  Penn  Plaza  East,
Newark,  New  Jersey  07105-2246.  Since  1979,  NJ  Transit  has  been
charged  by  law  with  operating,  by  contract  or  direct  operation,
commuter  rail  passenger  service  in  the  State  of  New  Jersey.
N.J.S.A. 27:25-1 et seq.

7.     For  purposes  of  this  action,  New  Jersey  Transit  is  the
successor-in-interest  to  the  former  Commuter  Operating  Agency

3

("COA") in the Department of Transportation of the State of New Jersey, and has assumed the rights and causes of action possessed by the COA by law, by contract or otherwise. N.J.S.A. 27:25-21.

8.   Defendant APU is a for-profit corporation of the State of Pennsylvania, with its principal place of business located at One East Fourth Street, Cincinnati, Ohio 45202.

9.   On information and belief, Defendant APU is the successor, by name change or otherwise, to the Penn Central Corporation, and the latter is the successor, by name change or otherwise, to the Penn Central Transportation Company. The Penn Central Transportation Company was formed from the merger of several railroads, including, inter alia, the former Pennsylvania Railroad Company. Hereinafter, Penn Central Corporation, Penn Central Transportation Company and the Pennsylvania Railroad Company collectively are referred to as "Penn Central."

10.   On information and belief, Defendant Conrail is a for-profit corporation of the State of Pennsylvania, established under Subchapter III of the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 741-748, with its principal place of business located at 2001 Market Street, Philadelphia, PA 19103.

11.   Defendants John Doe #1 through John Doe #10 are fictitious defendants presently unknown to the Plaintiff named

4

{01218062}

as defendants herein pursuant to Fed.R.Civ.P. 15 and R. 4:26-4. On information and belief, they are corporations or other legal entities that conduct, or have conducted, business in the State of New Jersey, or that own, or have owned, property in the State of New Jersey.

## BACKGROUND ALLEGATIONS

### A.   The Property And Operations Of The Parties

12.   Prior to April 1, 1976, at all times relevant to the Complaint, Penn Central owned and operated the rail right of way running through New Jersey connecting New York City and Washington D.C. over which it provided inter-city and commuter rail passenger service and operated and maintained rail passenger equipment.   Then known as the "Main Line," the right of way is now owned and operated by the National Railroad Passenger Corporation ("Amtrak") and known as the Northeast Corridor ("NEC").

13.   Prior to April 1, 1976, at all times relevant to the Complaint Penn Central also owned and operated the rail right of way connecting northern New Jersey coastal communities with the NEC and New York City known as the North Jersey Coast Line ("NJCL"), over which it provided commuter rail passenger service and operated and maintained rail equipment, including rail passenger service, equipment maintenance and yard maintenance

5

operations at the South Amboy Yard.   Hereinafter, the South Amboy Yard is sometimes referred to as "the Site."

14.  Between 1970 and April 1, 1976, Penn Central also provided rail passenger service and equipment maintenance operations on the NEC and the NJCL utilizing rail passenger equipment owned by the COA and/or the State of New Jersey, including rail passenger service, equipment maintenance and yard maintenance operations at the Site.

15.  On information and belief, beginning in or about 1936, the rail equipment owned, maintained and operated by Penn Central included electric engines ("locomotives") and electric self-propelled passenger cars ("multiple unit" cars or "MU" cars) equipped with transformers and capacitors utilizing dielectric fluids containing polychlorinated biphenyls ("PCBs").

16.  On April 1, 1976, pursuant to a Final System Plan formulated by the United States Railway Association and § 743(b) of the Regional Railroad Reorganization Act, 45 U.S.C. §§ 741 et seq., Penn Central conveyed the NEC to Conrail, and on that same date Conrail conveyed title to the NEC to Amtrak.

17.  On April 1, 1976, pursuant to the Final System Plan and the Rail Reorganization Act, Penn Central also conveyed the NJCL and the South Amboy Yard to Conrail.   Thereafter, Conrail continued to own and operate the South Amboy Yard until December 31, 1982, when that property and responsibility for its

6

maintenance and operation were transferred by Conrail to NJ Transit.

18.   Between April 1, 1976 and December 31, 1982, Conrail operated commuter rail passenger service over the NEC and the NJCL and related rail yards and operated and maintained rail passenger equipment and rail yards for that purpose, including rail passenger service, equipment maintenance and yard maintenance operations at the Site, pursuant to operating agreements with the COA, and, after 1979, with New Jersey Transit.

19.   The rail equipment maintained and operated by Conrail included electric locomotives and MU cars equipped with transformers and capacitors utilizing dielectric fluids containing PCBs.

20.   In 1979, New Jersey Transit was created pursuant to N.J.S.A. 27:25-1 et seq. as an independent state agency in part to provide, by contract or direct operation, commuter rail service in the State of New Jersey.

21.   On December 31, 1982, Conrail conveyed the South Amboy Yard to New Jersey Transit.

### B.   South Amboy Yard Remedial Activities

22.   The South Amboy Yard, located at Augusta Street, South Amboy, New Jersey, consists of Block 164, Lots 2, 3, 4, 5, 6, and 7, as depicted on the Tax Maps of the City of South Amboy.

It is located on or adjoining the NJCL right of way or property. The South Amboy Yard is currently owned by New Jersey Transit.

23. In 1991, pursuant to a negotiated settlement of an enforcement action brought by the United States Environmental Protection Agency ("EPA") against New Jersey Transit, New Jersey Transit agreed to conduct a site investigation of the South Amboy Yard. Based on subsequent soil samples and analyses taken by New Jersey Transit, the South Amboy Yard was found to be contaminated with PCBs in quantities exceeding cleanup levels established by the EPA and the New Jersey Department of Environmental Protection ("DEP"). Other contaminants, including but not limited to polycyclic aromatic hydrocarbons ("PAHs") and arsenic, were also detected at the South Amboy Yard exceeding EPA and DEP soil cleanup standards.

24. In or about April 23, 1992, New Jersey Transit, without admitting any responsibility or liability, entered into a Memorandum of Agreement ("MOA") with DEP to perform a remedial investigation and cleanup of the South Amboy Yard under DEP oversight. A copy of said MOA is appended hereto as Exhibit A.

25. Based on the results of a remedial investigation, New Jersey Transit under DEP supervision has remediated contaminated soil at the South Amboy Yard. As of November 2004, New Jersey Transit estimates that it has expended approximately $2.8 million on remediation of the South Amboy Yard.

8

26.   Remediation of the South Amboy Yard is not completed.

## COUNT I

### COST RECOVERY AND DECLARATORY RELIEF CLAIMS
### UNDER 42 U.S.C. § 9607(a)

27.   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a),

provides in pertinent part:

Notwithstanding any other provision or rule of law, and
subject only to the defenses set forth in subsection (b) or
this section—

(1)   the owner and operator of a vessel or a
facility,

(2)   any person who at the time of disposal of any
hazardous substance owned or operated any facility at
which such substances were disposed of,

(3)   any person who by contract, agreement or
otherwise arranged for disposal or treatment or
arranged with a transporter for transport for
disposal or treatment, of hazardous substances . . .
at any facility . . . owned or operated by another
party or entity and containing such hazardous
substances, and

(4)   any person who accepts or accepted any
hazardous substances for transport to disposal or
treatment facilities, incineration vessels or sites
selected by such person, from which there is a
release, or a threatened release which causes the
incurrence of response costs, of a hazardous
substance, shall be liable for –

(A)   all costs of removal or remedial action incurred
by the United States Government or a State or an
Indian tribe not inconsistent with the national
contingency plan;

(B) Any other necessary costs incurred by any other
person consistent with the national contingency plan;
. . . . .

9

28.  At all relevant times, the South Amboy Yard is and has been a "facility" as the term is defined in § 101(9) of CERCLA, 42 U.S.C. § 9601(9).

29.  The PCBs and other contaminants found at the Site are "hazardous substances" as that term is defined by §§ 101(14), (21) and (22) of CERCLA, 42 U.S.C. §§ 9601(14), (21) and (22).

30.  There have been releases, or threatened releases, of hazardous substances from the Site.

31.  Each locomotive and MU car (rolling stock) equipped with PCB transformers and capacitors is a "facility" as the term is defined in § 101(9) of CERCLA, 42 U.S.C. § 9601(9).

32.  There have been releases, or threatened releases, of hazardous substances from electric locomotives and MU cars at the Site.

33.  Each Defendant is a "person" as the term is defined in § 101(21) of CERCLA, 42 U.S.C. § 9601(21).

34.  On information and belief, Defendant APU, through its predecessors, and Defendant Conrail owned or operated the South Amboy Yard at the time of disposal of hazardous substances at the Site, from which there have been releases, or threatened releases, of hazardous substances.

35.  On information and belief, Defendant APU prior to April 1, 1976 owned or operated facilities, including electric locomotives, electric MU cars and other rolling stock, or

10

installations, structures and/or equipment, from which there have been releases of hazardous substances at the South Amboy Yard.

36. On information and belief, Defendant Conrail between April 1, 1976, and December 31, 1982 operated facilities, including electric locomotives, electric MU cars and other rolling stock, or installations, structures and/or equipment, from which there have been releases of hazardous substances at the South Amboy Yard.

37. On information and belief, Defendants John Doe #1 through John Doe #10 are unidentified companies or corporations which own "facilities" within the meaning of CERCLA in the vicinity of the Site; or owned or operated the Site or facilities in the vicinity of the Site; or arranged for disposal of hazardous substances at the Site or facilities in the vicinity of the Site; or transported hazardous substances to the Sites or to facilities in the vicinity of the Site selected by said Defendants, from which releases or threatened releases of hazardous substances have occurred causing or contributing to the presence of hazardous substances at the Site.

38. On information and belief, each Defendant is a "person" under 42 U.S.C. § 9601(21) who is the "owner and operator of a . . . facility" under 42 U.S.C. § 9607(a)(1), or "who at the time of disposal of any hazardous substance owned or

11

operated any facility at which such hazardous substances were disposed of" under 42 U.S.C. § 9607(a)(2), or "who by contract, agreement, or otherwise arranged for the disposal or treatment. . . . of hazardous substances at . . . any facility" owned or operated by such person or any another person under 42 U.S.C. §9607(a)(3), or "who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, . . . or sites selected by such person" under 42 U.S.C. § 9607(a)(4), from which there is a release or a threatened release . . . of a hazardous substance . . . ."

39. As a result of the foregoing, each Defendant is strictly liable, jointly and severally, without regard to fault, or potentially so liable, to the United States, the State of New Jersey or any other person, pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the costs of responding to the releases or threatened releases of hazardous substances at the Site.

40. As a result of the foregoing, Plaintiff has incurred, and will continue to incur, costs of response, as the term is defined in § 101(26) of CERCLA, 42 U.S.C. § 9601(25).

41. As a result of the foregoing, each Defendant is strictly liable, jointly and severally, without regard to fault, to New Jersey Transit for response costs incurred and to be incurred by it to address hazardous substances releases, or threatened releases, at the Site.

12

42.   Further, § 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), provides in pertinent part:

> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

43.   An actual controversy exists between Plaintiff and Defendants as to the liability of each Defendant for Plaintiff's past and future costs of responding to the releases or threat of releases of hazardous substances at the Site.

44.   Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), requires the entry of a declaratory judgment on liability that will have a binding effect on all future claims for response costs or damages concerning the Site.

45.   Plaintiff has satisfied any conditions precedent to the filing of this action to recover response costs pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

46.   Therefore, Plaintiff is entitled to a judgment from the Court that Defendants are persons strictly liable, jointly and severally, to Plaintiff under 42 U.S.C. § 9607(a) for all costs incurred or to be incurred by Plaintiff to respond to releases or the threat of releases of the hazardous substances at the Site, and that Plaintiff is entitled to recover such costs from Defendants.

13

{01218062}

## COUNT II

### CONTRIBUTION AND DECLARATORY RELIEF CLAIMS UNDER 42 U.S.C. § 107(a)

47. Plaintiff reasserts and incorporates the allegations in paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. Pursuant to § 107(a) of CERCLA, 42 U.S.C. § 107(a), and federal common law, Plaintiff has a right of contribution for its costs of responding to releases or threatened releases at the Site against any person liable or potentially liable for response costs to the United States, the State of New Jersey or any other person.

49. Each Defendant is a person liable or potentially liable for response costs under § 107(a) of CERCLA, 42 U.S.C. §9607 (a).

50. Pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), and federal common law, Plaintiff is entitled to contribution from each Defendant of a fair and equitable share of Plaintiff's costs of responding to releases or threatened releases at the Site.

51. An actual controversy exists between Plaintiff and Defendants as to the liability of each Defendant to Plaintiff in contribution for a fair and equitable share of past and future response costs incurred by Plaintiff at the Site.

14

52.   Plaintiff has satisfied any conditions precedent to the filing of this action for contribution and declaratory relief pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

53.   Therefore, Plaintiff is entitled to a judgment of the Court that each Defendant is liable to Plaintiff in contribution for a fair and equitable share of response costs incurred, and to be incurred, at the Site.

### COUNT III

### CONTRIBUTION AND DECLARATORY RELIEF CLAIMS UNDER 42 U.S.C. § 9613(f)(1)

54.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.   Pursuant to § 113(f)(1) of CERCLA, 42 U.S.C. §9613(f)(1):

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.   Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.

56.   Each Defendant is liable or potentially liable under §107(a) of CERCLA, 42 U.S.C. § 9607(a).

57.   Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), further provides:

> In resolving contribution claims, the court may allocate response costs among liable parties using

15

> such equitable factors as the court determines are
> appropriate.    Nothing  in  this  subsection  shall
> diminish the right of any person to bring an action
> for contribution in the absence of a civil action
> under section 9606 of this title or section 9607 of
> this title.

58.  Section   113(f)(3)(B)   of   CERCLA,   42   U.S.C.
§9613(f)(3)(B), further provides:

> A person who has resolved its liability to the United
> States or a State for some or all of a response
> action or for some or all of the cost of such action
> in  an  administrative  or  judicially  approved
> settlement may seek contribution from any person who
> is not party to a settlement referred to in paragraph
> (2).

59.  Plaintiff New Jersey Transit is a "person" within the
meaning of § 113(f) of CERCLA, 42 U.S.C. § 9613(f).

60.  Plaintiff  has  paid  more  than  its  equitable  and
allocable share of response costs in responding to releases at
the Site, and pursuant to § 113(f)(1) of CERCLA, 42 U.S.C.
§9613(f)(1),  it  is  entitled  to  contribution  of  an  equitable
share of such costs from each Defendant.

61.  Plaintiff  has  paid  more  than  its  equitable  and
allocable share of response costs in responding to releases at
the Sites, and pursuant to § 113(f)(3)(B) of CERCLA, 42 U.S.C.
§9613(f)(3)(B), it is entitled to contribution of an equitable
share of such costs from each Defendant.

62.  Further, § 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2),
provides in pertinent part:

> In any such action described in this subsection, the
> court shall enter a declaratory judgment on liability

16

> for response costs or damages that will be binding on
> any subsequent action or actions to recover further
> response costs or damages.

63.  An actual controversy exists between Plaintiff and Defendants as to the liability of each of Defendant to Plaintiff in contribution for an equitable share of past and future response costs at the Site.

64.  Section 9613(g)(2) of CERCLA, 42 U.S.C. § 9613(g) (2), requires the entry of a declaratory judgment on liability that will have a binding effect on all future claims for response costs or damages concerning the Site.

65.  Plaintiff has satisfied any conditions precedent to the filing of this action for contribution pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f).

66.  Therefore, Plaintiff is entitled to a judgment of the Court that Defendants are persons liable to Plaintiff pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f), for contribution of an equitable share of Plaintiff's response costs incurred, and to be incurred, by Plaintiff to respond to releases or threatened releases of hazardous substances at the Site, and that Plaintiff is entitled to recover such costs from Defendants.

17

**COUNT IV**

**COST RECOVERY CLAIMS
UNDER THE NEW JERSEY SPILL ACT**

67.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68.   N.J.S.A. 58:10-23.11c of the Spill Act provides in part: "The discharge of hazardous substances is prohibited."

69.   N.J.S.A. 58:10-23.11g.c(1) of the New Jersey Spill Act provides in pertinent part:

> Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.  Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred by the department or a local unit pursuant to subsection b. of section 7 of P.L.1976, c. 141 (C.58:10-23.11f).

70.   Defendants are "persons" within the meaning of N.J.S.A. 58:10-23.11g, as defined in N.J.S.A. 58:10-23.11b.

71.   N.J.S.A. 58:10-23.11b defines "discharge" as

> any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters of the State or onto lands of the State or into waters outside the jurisdiction of State when damage may result to the lands, waters or natural resources within the jurisdiction of the State.

72.   N.J.S.A. 58:10-23.11b defines "cleanup and removal costs" as

> all direct costs associated with a discharge, and
> those indirect costs that may be imposed by the
> department pursuant to section 1 of P.L.2002, c. 37
> associated with a discharge, incurred by the State or
> its political subdivisions or their agents or any
> person with written approval from the department in
> the: (1) removal or attempted removal of hazardous
> substances, or (2) taking of reasonable measures to
> prevent or mitigate damage to the public health,
> safety, or welfare, including, but not limited to,
> public and private property, shorelines, beaches,
> surface waters, water columns and bottom sediments,
> soils and other affected property, including wildlife
> and other natural resources, and shall include costs
> incurred by the State for the indemnification and
> legal defense of contractors pursuant to sections 1
> through 11 of P.L.1991, c. 373 (C.58:10-23.11f8 et
> seq.)[.]

73. Hazardous substances have been discharged or released at the Site within the meaning of N.J.S.A. 58:10-23.11g, as provided in N.J.S.A. 58:10-23.11b, and related regulations, including N.J.A.C. 7:1J-1.4 and 7:1E-1.7.

74. On information and belief, Defendants have discharged hazardous substances at the Site or are persons in any way responsible for hazardous substances at the Site.

75. As a result of the foregoing, Plaintiff has incurred cleanup and removal costs at the Site, and will continue to incur cleanup and removal costs in the future, to address discharges of hazardous substances at the Site.

76. Pursuant to N.J.S.A. 58:10-23.11g.c, Defendants are strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs at the Site no matter by whom incurred.

19

77. Pursuant to N.J.S.A. 58:10-23.11g.c, Defendants are strictly liable, jointly and severally, to Plaintiff, without regard to fault, for all cleanup and removal costs incurred, and to be incurred, by Plaintiff at the Site.

### COUNT V

### CONTRIBUTION CLAIMS
### UNDER THE NEW JERSEY SPILL ACT

78. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79. N.J.S.A. 58:10-23.11f.a of the New Jersey Spill Act provides in part:

> (2) Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of subsection c. of section 8 of P.L. 1976, c. 141 (C.58:10-23.11g), and the contribution defendant shall have only the defenses to liability available to parties pursuant to subsection d. of section 8 of P.L. 1976, c. 141 (C.58:10-23.11g). In resolving contribution claims, a court may allocate the cost of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall affect the right of any party to seek contribution pursuant to any other statute or under common law.

80. On information and belief, Defendants have discharged hazardous substances, or are persons in any way responsible for

hazardous substances, at the South Amboy Yard, who are liable pursuant to N.J.S.A. 58:10-23.11q for the costs of cleanup of the Site.

81.   Plaintiff has incurred costs, and in the future will continue to incur costs, to clean up and remove discharges of hazardous substances at the Site.

82.   Therefore, Plaintiff has a right of contribution pursuant to N.J.S.A. 58:10-23.11f.a and/or N.J.S.A. 58:10-23.11g against each of the Defendants and each Defendant is liable to Plaintiff in contribution for an equitable allocable share of the costs of the cleanup and removal actions undertaken by the Plaintiff at the Site.

### COUNT VI

### CONTRIBUTION CLAIMS
### UNDER NEW JERSEY JOINT TORTFEASOR CONTRIBUTION ACT

83.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.   While Plaintiff has not admitted responsibility or liability the hazardous substances in question, if Plaintiff should be found liable in any way for addressing hazardous substances or contaminants at the Site, it is entitled to a judgment pursuant to the New Jersey Joint Tortfeasor Contribution Act, N.J.S.A. 2A:53A-1 et seq., the New Jersey

21

{01218062}

Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., and the New Jersey Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., declaring that each Defendant is liable to Plaintiff for an equitable, fair and proportionate share of such costs.

### COUNT VII

### NUISANCE

85.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.   The releases, discharges and continuing presence of contaminants at, from and near the South Amboy Yard interferes with the exercise of rights common to all, and directly, particularly and proximately injures the rights and property of Plaintiff, compelling Plaintiff to incur response costs to abate conditions at the South Amboy Yard and damages.

87.   The releases, discharges and continuing presence of contaminants at the South Amboy Yard constitute a public and private nuisance caused by Defendants which they have failed to abate.

88.   Defendants are liable to Plaintiff for damages, including but not limited to past and future cleanup costs incurred by Plaintiff and diminution in the value of the South Amboy Yard property, arising out of the public and private

22

{01218062}

nuisance at the Site, and responsible under the common law to abate the nuisance.

## COUNT VIII

### TRESPASS

89.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.   The releases, discharges and continuing presence of contaminants at, from and near the South Amboy Yard, constitute a trespass by Defendants against Plaintiff.

91.   Plaintiff is entitled to damages from Defendants as a result of said trespass, including but not limited to reimbursement of cleanup costs and diminution in the value of the South Amboy Yard property.

## COUNT IX

### STRICT LIABILITY

92.   Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 91 of this of this Complaint as if fully set forth herein.

93.   By reason of its foregoing operations, Defendant APU was engaged in, or responsible for the conduct of, abnormally dangerous or ultra-hazardous activities causing or contributing to the contamination at the South Amboy Yard.

23

{01218062}

94. By reason of its foregoing operations, Defendant Conrail was engaged in, or responsible for the conduct of, abnormally dangerous or ultra-hazardous activities causing or contributing to the contamination at the South Amboy Yard.

95. Therefore, Defendants APU and Conrail are strictly liable to Plaintiff for damages, including but not limited to, reimbursement of cleanup costs at the Site and diminution in the value of the South Amboy Yard property.

**COUNT X**

**TORTIOUS CONTAMINATION**

96. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97. Upon information and belief, the contamination at the Site is the result of past negligent or reckless acts or omissions of Defendant APU in providing rail passenger service, in operating and maintaining electric locomotives and MU cars, or in operating and maintaining the Site and related equipment and facilities, or in arranging for the storage or disposal of hazardous wastes or substances at the Site, or in transporting hazardous wastes or substances to the Site for storage or disposal.

98. Upon information and belief, the contamination at the South Amboy Yard is the result of past negligent or reckless

24

acts or omissions of Defendant Conrail in providing rail passenger service, in operating and maintaining electric locomotives and MU cars, or in operating and maintaining the Site and related equipment or facilities, or in arranging for the storage or disposal of hazardous wastes or substances at the Site, or in transporting hazardous wastes or substances to the Site for storage or disposal.

99. Therefore, Plaintiff is entitled to damages from Defendants APU and Conrail on account of said tortious conduct, including but not limited to reimbursement of cleanup costs at the Site and diminution in the value of the South Amboy Yard property.

## COUNT XI

### INDEMNIFICATION

100. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101. Plaintiff has not admitted responsibility or liability to DEP or the EPA for addressing the contamination at the Site.

102. Should Plaintiff nonetheless be adjudged to have any liability under any applicable statutes or common law for the contamination at the Site, its liability is purely secondary, vicarious, imputed, indirect, passive or technical, while the liability of Defendant APU is primary, direct and active.

25

{01218062}

103. Should Plaintiff nonetheless be adjudged to have any liability under any applicable statutes or common law for the contamination at the Site, its liability is purely secondary, vicarious, imputed, indirect, passive or technical, while the liability of Defendant Conrail for the South Amboy Yard is primary, direct and active.

104. Therefore, Plaintiff is entitled to indemnification from Defendants APU and Conrail for any liability that may be imposed on Plaintiff relating to contamination at the South Amboy Yard.

## COUNT XII

### RESTITUTION

105. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106. By undertaking to respond to, investigate and clean up hazardous substances or contamination at the Site, Plaintiff has assumed obligations belonging to Defendant APU and Defendant APU has been unjustly enriched.

107. By undertaking to respond to, investigate and clean up hazardous substances or contamination at the South Amboy Yard, Plaintiff has also assumed obligations belonging to Defendant Conrail and Defendant Conrail has been unjustly enriched.

26

108. Therefore, Plaintiff is entitled to restitution from Defendants APU and Conrail for the South Amboy Yard cleanup.

### COUNT XIII

### CONTRACTUAL INDEMMNIFICATION
### (PENN CENTRAL)

109. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 108 of this Complaint as if fully set forth herein.

110. Beginning on July 1, 1965 and running through April 1, 1976, the COA and Penn Central entered into a series of agreements obligating Penn Central to operate and maintain rail equipment owned by the COA and/or the State of New Jersey to provide New Jersey commuter rail passenger service, including service on the NEC and the NJCL ("Penn Central Operating Agreements").

111. Pursuant to the Penn Central Operating Agreements, Penn Central covenanted to defend and indemnify the State or the COA for any property damage, claims, liabilities, damages or loss resulting from Penn Central's activities under the Operating Agreements.

112. An actual controversy exists between Plaintiff and Defendant APU as to APU's duty to defend and indemnify Plaintiff for property damage, claims, liabilities, damages or loss arising out of Penn Central's activities under the Penn Central

27

Operating Agreements, contamination at the Site and related damages.

113. Plaintiff is entitled to a declaratory judgment that Defendant APU is contractually obligated to defend and indemnify Plaintiff for all such property damage, claims, liabilities, damages or loss, including cleanup costs incurred by Plaintiff to address contamination at the South Amboy Yard, and related damages.

### COUNT XIV

### BREACH OF CONTRACT
### (PENN CENTRAL)

114. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115. Pursuant to the Penn Central Operating Agreements, Penn Central agreed to operate and maintain rail equipment owned by the COA and/or the State of New Jersey and to provide New Jersey commuter rail passenger service, including service on the NEC and the NJCL, in a safe, sanitary and proper manner, in accordance with standards established by regulatory agencies for the protection of the public, and otherwise.

116. On information and belief, Penn Central failed to perform and breached its contractual service and equipment operation and maintenance obligations to the COA and Plaintiff,

28

thereby causing or contributing to the contamination at the South Amboy Yard.

117. As a result of the foregoing, Plaintiff has incurred, and will continue to incur, response costs to address the contamination at the Site and related damages, and Defendant APU is liable to Plaintiff for damages.

## COUNT XV

### CONTRACTUAL INDEMNIFICATION
### (CONRAIL)

118. Plaintiff reasserts and incorporates by reference the allegations in paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119. Pursuant to a Transfer Agreement dated September 1, 1982 ("Transfer Agreement"), Conrail agreed to convey the South Amboy Yard to Plaintiff. On December 31, 1982, Conrail conveyed the South Amboy Yard to Plaintiff.

120. Pursuant to the Transfer Agreement and a Settlement Agreement between Plaintiff and Defendant Conrail dated December 31, 1982 ("Settlement Agreement"), Conrail covenanted to indemnify Plaintiff for any property damage, claims, liabilities, damages or loss related to contamination of the environment at the South Amboy Yard that occurred prior to its transfer to Plaintiff.

29

{01218062}

121. An actual controversy exists between Plaintiff and Defendant Conrail as to Conrail's liability under the Transfer and Settlement Agreements to indemnify Plaintiff for property damage, claims, liabilities, damages or loss arising out of contamination at the South Amboy Yard and related damages.

122. Plaintiff is entitled to a declaratory judgment that Defendant Conrail is contractually obligated under the Transfer and Settlement Agreements to indemnify Plaintiff for all such property damage, claims, liabilities, damages or loss, including cleanup costs incurred by Plaintiff to address contamination at the South Amboy Yard, and related damages.

**COUNT XVI**

**BREACH OF CONTRACT**
**(CONRAIL)**

123. Plaintiff reasserts and incorporates the allegations in paragraphs 1 through 122 of the Compliant as if fully set forth herein.

124. Pursuant to one or more agreements with the COA or Plaintiff ("Conrail Operating Agreement"), Conrail was obligated to operate and maintain passenger rail equipment owned by the COA and New Jersey Transit and to provide New Jersey rail passenger service on the NEC and the NJCL and appurtenant yards, including the South Amboy Yard, in a safe, efficient and proper

30

manner and in accordance with sound operation and maintenance practices.

125. On information and belief, Conrail failed to perform and breached its contractual passenger service and equipment maintenance obligations to the COA and Plaintiff, thereby causing or contributing to the contamination at the Site.

126. As a result of the foregoing, Plaintiff has incurred, and will continue to incur, costs of cleanup at the Site and related damages, and Defendant Conrail is liable to Plaintiff for damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Declaring that Defendants are liable to indemnify and reimburse Plaintiff for all response costs or cleanup and removal costs incurred by Plaintiff, past, present and future, to address hazardous substances or contamination at the Site;

b. Ordering Defendants to indemnify and reimburse Plaintiff for all response costs or cleanup and removal costs incurred by Plaintiff to date to address hazardous substances or contamination at the Site;

c. Declaring that Defendants are liable to Plaintiff for all damages arising out of the presence of hazardous substances or contamination at the Site, including but not limited to

31

damages for diminution in the value of the South Amboy Yard property;

d.    Declaring that each Defendant is liable to Plaintiff in contribution for an equitable and fair share of Plaintiff's costs of addressing hazardous substances or contamination at the Site and related damages;

e.    Determining the equitable and fair share of each Defendant liable in contribution for such costs and damages;

f.    Ordering each Defendant to pay its allocable share of all such costs and damages incurred to date and, on request of Plaintiff, to pay its allocable share of such future costs and damages as they are incurred;

g.    Ordering Defendants to pay Plaintiff its costs of suit, together with pre-judgment and post-judgment interest and attorney's fees; and

h.    Granting such other relief as this Court may deem equitable and just.

Respectfully submitted,

Dated: 12/29/04

Nielsen V. Lewis, Esq. (NVL 0631)
HILL WALLACK
Attorneys at Law
202 Carnegie Center
Princeton, NJ 08543-5226
(609) 924-0808
Attorneys for Plaintiff

32

{01218062}